

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00515-CV

**IN THE INTEREST OF V.S.**, a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2019PA00518
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
               Beth Watkins, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: April 14, 2021

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's and Dad's respective parental rights to their child V.S.[i] Mom and Dad challenge the legal and factual sufficiency of the evidence for the trial court's findings on the best interest of the child, and Dad also challenges the statutory grounds findings. Because the evidence was legally and factually sufficient, we affirm the trial court's order.

### BACKGROUND

About the time V.S. was born, the Department received a referral that, while she was pregnant with V.S., Mom tested positive for cocaine. When V.S. was born, Mom called an

---

[i] We use aliases to protect the child's identity. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

acquaintance (Foster Mom) to take V.S. and care for him, which Foster Mom did. Mom identified Dad as the alleged father, but Dad denied paternity.

The Department created service plans for Mom and Dad. Mom engaged in services and completed them. Dad refused to engage in services until a DNA test proved he was V.S.'s father—at least one year after Dad was served. During the case, Mom completed drug treatment twice, but she relapsed each time.

After a one-day trial on the merits, the trial court found by clear and convincing evidence that Mom's and Dad's courses of conduct met the grounds in Family Code section 161.001(b)(1)'s subsections (N), (O), and (P), and that terminating Mom's and Dad's parental rights was in V.S.'s best interest. The trial court terminated Mom's and Dad's parental rights to V.S. and appointed the Department as V.S.'s permanent managing conservator.

On appeal, Mom and Dad each challenge the legal and factual sufficiency of the evidence for the trial court's findings on the best interest of the child, and Dad challenges the statutory grounds findings.

EVIDENCE REQUIRED, STANDARDS OF REVIEW

The evidentiary standard[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal and factual[3] sufficiency standards of review. We apply them here.

We begin with Dad's first issue—challenging the statutory grounds findings.

STATUTORY GROUNDS FOR TERMINATING DAD'S PARENTAL RIGHTS

**A.      Statutory Grounds Findings**

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).

Dad argues the evidence was legally and factually insufficient to support the trial court's finding on each ground, i.e., (N), (O), and (P). We begin with ground (N). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N).

**B.      Section 161.001(b)(1)(N)**

To prove a parent has constructively abandoned a child, the Department must prove the following:

> the child . . . has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>
> (i)   the department has made reasonable efforts to return the child to the parent;
>
> (ii)  the parent has not regularly visited or maintained significant contact with the child; and
>
> (iii) the parent has demonstrated an inability to provide the child with a safe environment;

TEX. FAM. CODE ANN. § 161.001(b)(1)(N); *accord In re F.E.N.*, 542 S.W.3d 752, 766 (Tex. App.—Houston [14th Dist.] 2018), *pet. denied sub nom. In re F.E.N.*, 579 S.W.3d 74 (Tex. 2019) (per curiam). "The first element focuses on the Department's conduct; the second and third elements focus on the parent's conduct." *In re A.L.H.*, 468 S.W.3d 738, 744 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *accord In re C.E.P.*, No. 01-19-00120-CV, 2019 WL 3559004, at *17 (Tex. App.—Houston [1st Dist.] Aug. 6, 2019, no pet.) (mem. op.) (noting that evaluating a safe environment includes examining the "parent's conduct in the home").

**C.      Elements Not Challenged**

Dad does not argue that V.S. was not in the Department's conservatorship for less than six months, and the record shows V.S. was. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N); *In re K.A.S.*, 399 S.W.3d 259, 263–64 (Tex. App.—San Antonio 2012, no pet.).

Dad also does not argue that the Department failed to prove it made reasonable efforts to return his child to him, which it did. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N)(i); *In re A.Q.W.*, 395 S.W.3d 285, 289 (Tex. App.—San Antonio 2013) ("Implementation of a family service plan by the Department is considered a reasonable effort to return a child to its parent if the parent has been given a reasonable opportunity to comply with the terms of the plan."), *overruled on other grounds by In re J.M.T.*, No. 04-19-00807-CV, 2020 WL 7633950, at *4 (Tex. App.—San Antonio Dec. 23, 2020, no pet.) (en banc); *In re A.M.T.*, No. 14-18-01084-CV, 2019 WL 2097541, at *4 (Tex. App.—Houston [14th Dist.] May 14, 2019, pet. denied) (mem. op.).

Finally, Dad does not challenge the evidence of his failing to maintain significant contact with V.S., which was shown by Dad's failing to visit or even ask about V.S. until a single, virtual visit one week before trial. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N)(ii) (significant contact); *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.).

## D.    Safe Environment for the Child

Instead, Dad asserted at trial that he could provide a stable and loving home for V.S. He testified that he had stable employment, but he did not provide paycheck stubs, his employer's business address, or other proof of stable employment as ordered. When asked about his employment, Dad stated he had "been trying to look for a job . . . and doing side jobs," and he had had his current job for one month.

Nevertheless, on appeal he argues the Department failed to prove he is unable to provide V.S. with a safe environment. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N)(iii); *In re N.A.V.*, No. 04-19-00646-CV, 2020 WL 1250830, at *7 (Tex. App.—San Antonio Mar. 17, 2020, pet. denied) (mem. op.) (citing *In re G.P.*, 503 S.W.3d 531, 533–34 (Tex. App.—Waco 2016, pet. denied)).

**E.      Factors Regarding Safe Environment**

In reviewing the evidence pertaining to Dad's willingness and ability to provide V.S. with a safe environment, we consider, inter alia, the following factors: V.S.'s age and physical and mental vulnerabilities; the results of V.S.'s developmental evaluations; Dad's willingness and ability to seek out, accept, and complete counseling services; and the adequacy of Dad's parenting skills, including his ability to understand and provide appropriate care and nurturing to meet V.S.'s physical and psychological development needs; Dad's history of assaultive conduct; and Dad's history of substance abuse. *See* TEX. FAM. CODE ANN. § 263.307(b) (safe environment factors); *In re N.A.V.*, 2020 WL 1250830, at *7 ("Multiple factors are relevant to determining if a parent is willing and able to provide children with a safe environment.").

The trial court heard the following testimony regarding these factors.

*1.      V.S.'s Age, Physical, Mental Vulnerabilities*

At the time of trial, V.S. was eighteen months old, he was diagnosed with a heart murmur, he was receiving speech therapy, and he was being referred to a specialist for a possible spine problem which was affecting his walking. V.S. needs constant supervision because, due to his heart murmur, if he cries for too long, or tries to run around, or if he gets overexcited, he cannot breathe and he turns blue or purple. He has already passed out once when he started walking, and if he were overstressed regularly, he could develop an aneurysm. Because of his condition, he will need ongoing testing, monitoring, and follow up by his cardiologist. *Cf. In re A.K.L.*, No. 01-16-00489-CV, 2016 WL 7164065, at *10 (Tex. App.—Houston [1st Dist.] Dec. 8, 2016, pet. denied) (mem. op.) (special needs children); *In re L.L.W.*, No. 04-15-00221-CV, 2015 WL 4638263, at *3 (Tex. App.—San Antonio July 15, 2015, pet. denied) (mem. op.) (same).

*2.      Dad's Understanding of, Ability to Care for, V.S.'s Needs*

Despite V.S.'s diagnosed medical conditions and his need for constant care, in the eighteen months of V.S.'s life, Dad never asked about V.S., his medical conditions or developmental progress, his doctors, or what care is required for V.S.'s physical and psychological development. *Contra* TEX. FAM. CODE ANN. § 263.307(b)(12); *In re A.K.L.*, 2016 WL 7164065, at *10; *In re L.L.W.*, 2015 WL 4638263, at *3.

*3.      Willingness to Seek, Accept, Complete Services*

For at least the first twelve months of the case, Dad emphatically refused the Department's repeated attempts to engage him in services. *Cf. In re N.A.V.*, 2020 WL 1250830, at *8 ("Another factor that may be considered in determining if a parent is willing and able to provide a safe environment is whether the parent is willing and able to cooperate with and facilitate an appropriate agency's close supervision."). The ordered services were designed to help him personally and help him learn adequate parenting skills. The caseworker warned Dad of the potential consequences of his delaying engaging in services, but Dad continued to refuse services. *Cf. In re G.P.*, 503 S.W.3d at 534 (affirming parental rights termination for parent's failure to provide a safe environment by, inter alia, failing to seek out and accept counseling services and engage in ordered services). Nevertheless, despite Mom identifying him as V.S.'s father, Dad repeatedly refused *any* services until the Department ordered him to take a DNA test—which ultimately proved he was V.S.'s father.

*4.      History of Assaultive Conduct*

Dad had committed domestic violence against Mom, and his service plan ordered him to complete a domestic violence prevention course. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) ("[A]busive or violent conduct by a parent . . . may produce an environment that endangers the physical or emotional well-being of a child."); *see also Tex. Dep't*

*of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (noting that a parent's violence need not "be directed at the child or . . . the child actually suffer[] injury" to constitute endangering the child). But as noted, Dad refused to engage in services, and he did not complete the course.

     5.     *Dad's Substance Abuse*

When asked about his drug use, Dad stated "I smoke marijuana and I've done cocaine." At the time of trial, Dad was on probation for possession of marijuana, and he admitted to using marijuana and cocaine after V.S.'s case began. *Cf. In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (agreeing that "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct"); *In re Y.Z.*, No. 04-20-00429-CV, 2021 WL 469014, at *4 (Tex. App.—San Antonio Feb. 10, 2021, no pet. h.) (mem. op.).

**F.    Constructive Abandonment**

Given the evidence presented at trial, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction about the truth of the [Department's] allegations." *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). The record shows the Department made reasonable efforts to return V.S. to Dad, Dad had no significant contact with V.S., and the Department proved Dad demonstrated an inability to provide V.S. with a safe environment. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N); *In re A.M.T.*, 2019 WL 2097541, at *4; *In re A.L.H.*, 468 S.W.3d at 744. Therefore, the evidence was legally and factually sufficient to support the trial court's finding that Dad constructively abandoned V.S. *See* TEX. FAM. CODE ANN. § 161.001(B)(1)(N); *In re C.E.P.*, 2019 WL 3559004, at *17; *In re G.K.G.A.*, No. 01-16-00996-CV, 2017 WL 2376534, at *5 (Tex. App.—Houston [1st Dist.] June 1, 2017, pet. denied) (mem. op.).

Because only a single statutory ground finding is needed to support an order terminating a parent's rights to a child, *In re A.V.*, 113 S.W.3d at 362, we need not address the other statutory grounds, *see* TEX. R. APP. P. 47.1; *In re R.S.-T.*, 522 S.W.3d at 111.

We overrule Dad's first issue.

## BEST INTEREST OF THE CHILD (DAD)

In his second issue, Dad argues the evidence was legally and factually insufficient to support the trial court's finding that terminating his parental rights was in V.S.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

The Family Code statutory factors[4] and the *Holley* factors[5] for best interest of the child are well known. Applying the applicable standards of review and statutory and common law best interest factors, we examine the evidence pertaining to Dad and the best interest of the child. The same evidence we considered in the statutory grounds review may also be probative in the best interest of the child review. *See In re C.H.*, 89 S.W.3d at 28; *In re R.S.-T.*, 522 S.W.3d at 97.

## A. Dad's Course of Conduct

Dad perpetrated domestic violence against Mom, had an admitted history of using marijuana and cocaine, including after the case began, and was on probation for possession of marijuana. Given V.S.'s need for careful, continuous care, Dad's history of family violence and continued drug use could have put V.S. at risk if he was in Dad's care. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8), (10), (11), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D), (H)). Further, Dad failed to develop or maintain any significant contact with V.S., including learning about V.S.'s special needs which required ongoing, specialized medical care. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

## B. V.S.'s Placement

V.S. has lived with Foster Mom, her sister, and her grandmother since his birth. *See Holley*, 544 S.W.2d at 372 (factors (F), (G)). Foster Mom's home is safe and stable, and the family members provide additional stability and emotional support. *See* TEX. FAM. CODE ANN.

§ 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)). Foster Mom is ensuring all of V.S.'s physical and emotional needs are being met, including his particularized medical and developmental needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)). V.S. is bonded to Foster Mom, her sister, and grandmother, and he is thriving. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)). Foster Mom wants to adopt V.S. *See Holley*, 544 S.W.2d at 372 (factors (F), (G)).

## C.     Ad Litem's Recommendation

The child's ad litem noted how well V.S. is doing with Foster Mom's family. *See id.* (factors (D), (F), (G)). The ad litem concluded it was in V.S.'s best interest for Dad's parental rights to be terminated so that Foster Mom may adopt V.S.

## D.     Sufficient Evidence

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in V.S.'s best interest for Dad's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Dad's second issue.

## BEST INTEREST OF THE CHILD (MOM)

Mom does not challenge the trial court's statutory grounds findings. Instead, in her sole issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in V.S.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

Applying the applicable standards of review and Family Code and common law best interest factors, we examine the evidence pertaining to Mom and the best interest of the child.

## A. Mom's Course of Conduct

The trial court heard the following testimony regarding Mom's course of conduct. Although Mom completed most or all the ordered services, Mom has not met the service plan goals. Mom has not shown she can meet V.S.'s physical and emotional needs. In fact, Mom continues to rely on others to provide her basic necessities. Further, Mom has not demonstrated that she can remain sober.

### 1. History of Care for Her Children

Mom testified she wants to have children, and she has given birth to seven children from four different fathers in eight years. While Mom was pregnant with V.S., her then two-year-old child N.T. was found alone in a parking lot at 2:00 am, there was other evidence he was severely neglected, and N.T. was removed from her care. At least three of her children are on Department safety plans, and all seven of her children are being raised by other people. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

### 2. Ongoing Drug Abuse

In March 2019, within a few days of when V.S. was born, the Department received a report that Mom had tested positive for cocaine during her prenatal visits in January 2019, and the Department began an investigation. In July and October 2019, she again tested positive for cocaine, and in October, she was arrested for possession of a controlled substance. In January 2020, Mom tested positive for methamphetamine, and on July 22, 2020, in contravention of her service plan, Mom tested positive for alcohol.

Mom admitted she turns to drugs or alcohol when she is "going through a phase," in social settings, and when she is stressed out, and her drugs of choice are cocaine and alcohol. Mom has been in drug treatment twice, but each time she has returned to drug and alcohol abuse. When asked if she was addicted to cocaine, she said she was not, and she added "I can quit anytime." *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (6), (7), (8), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H), (I)).

### 3. *Indicia of Parent-Child Relationship*

In her service plan, Mom was encouraged to develop and maintain significant contact with V.S., but she missed 30-40% of her visits with him. During the visits she attended, she left V.S. in the carrier for almost the entire hour of the visit. The case worker was concerned about Mom's lack of attachment to V.S., and she discussed that with Mom and Mom's therapist. Mom's therapist addressed that concern with Mom, and the therapist does not recommend reunification.

Although Mom brought snacks or diapers for V.S. during her visits, she did not provide items needed for V.S.'s ongoing care. Mom never called to ask about how V.S. was doing or about his heart condition. She did not ask who V.S.'s cardiologist was, for the doctor's phone number, or ask to attend medical appointments with V.S. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

### 4. *V.S.'s Placement*

From birth, V.S. has lived with Foster Mom, her sister, and her grandmother, and Foster Mom wants to adopt V.S. *See Holley*, 544 S.W.2d at 372 (factors (F), (G)). Foster Mom and grandmother are taking good care of V.S.; they are ensuring all of V.S.'s needs are met, including his particularized medical and developmental needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)). Foster Mom's home is safe and stable, and there are other family members living there. *See* TEX. FAM. CODE ANN.

§ 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)). V.S. is bonded to Foster Mom, her sister, and grandmother, and he is thriving. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)).

### 5. Ad Litem's Recommendation

The child's ad litem noted how well V.S. is doing with Foster Mom's family. *See Holley*, 544 S.W.2d at 372 (factors (D), (F), (G)). The ad litem concluded it was in V.S.'s best interest for Mom's parental rights to be terminated so that Foster Mom may adopt V.S.

## B. Sufficient Evidence

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in V.S.'s best interest for Mom's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's sole issue.

## CONCLUSION

The evidence presented at trial was legally and factually sufficient for the trial court to have found by clear and convincing evidence that Dad's course of conduct met at least one of the three statutory grounds supporting termination of his parental rights. The evidence was also legally and factually sufficient for the trial court to have found by clear and convincing evidence that terminating Mom's and Dad's respective parental rights was in V.S.'s best interest. Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice

[1] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's and Dad's courses of conduct each met the following criteria or grounds:

    (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
        (i) the department has made reasonable efforts to return the child to the parent;
        (ii) the parent has not regularly visited or maintained significant contact with the child; and
        (iii) the parent has demonstrated an inability to provide the child with a safe environment;
    (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [and]
    (P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:
        (i) failed to complete a court-ordered substance abuse treatment program; or
        (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance.

*Id.* § 161.001(b)(1).

[3] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[4] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

    (1) the child's age and physical and mental vulnerabilities;
    (2) the frequency and nature of out-of-home placements;
    (3) the magnitude, frequency, and circumstances of the harm to the child;
    (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;
    (5) whether the child is fearful of living in or returning to the child's home;
    (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
    (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
    (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;
    (9) whether the perpetrator of the harm to the child is identified;
    (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12)    whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

    (A) minimally adequate health and nutritional care;

    (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

    (C) guidance and supervision consistent with the child's safety;

    (D) a safe physical home environment;

    (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

    (F) an understanding of the child's needs and capabilities; and

(13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[5] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

    (A) the desires of the child;

    (B) the emotional and physical needs of the child now and in the future;

    (C) the emotional and physical danger to the child now and in the future;

    (D) the parental abilities of the individuals seeking custody;

    (E) the programs available to assist these individuals to promote the best interest of the child;

    (F) the plans for the child by these individuals or by the agency seeking custody;

    (G) the stability of the home or proposed placement;

    (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

    (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).